# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CARL ARNAUD (#363954)**

**VERSUS**

**DARREL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 17-37-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 1, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CARL ARNAUD (#363954)**

**VERSUS**

**DARREL VANNOY, ET AL.**

CIVIL ACTION

NO. 17-37-JWD-RLB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Carl Arnaud, challenges his conviction, entered in 2011 in the Eighteenth Judicial District Court for the Parish of West Baton Rouge, State of Louisiana, on one count of second-degree murder. On February 14, 2017, the petitioner filed a petition for a writ of habeas corpus (R. Doc. 1) contending: (1) the state court erred in failing to conduct an evidentiary hearing, (2) he received ineffective assistance of counsel due to trial counsel's failure to object to testimony by the state's expert, (3) he received ineffective assistance of counsel from appellate counsel due to appellate counsel's failure to assign a witness sequester violation as error on appeal, (4) he was denied due process because the state knowingly solicited perjured testimony from an expert witness, (5) he received ineffective assistance of counsel because trial counsel stipulated that the state's forensic pathologist was an expert, and (6) he received ineffective assistance of counsel because trial counsel failed to object to *Batson* violations.

On March 7, 2019, the petitioner filed a document he styled as "Memorandum of Law in Support of Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to Title 28

2

U.S.C. § 2241" (R. Doc. 15).[1]  In this document, the petitioner seeks to amend his initial habeas

petition, asserting: (1) the court should consider his additional claims, (2) the trial court erred in

denying his motion for a mistrial and erred in allowing the state to amend the indictment after

jury selection was completed, (2B) the jury verdict was an unreasonable determination in light of

the facts and evidence, (3) the First Circuit failed to conduct a sufficient scope of appellate

review, and (4) the trial court denied petitioner's right to full voir dire examination of

prospective jurors.

## I.    Procedural History

After a trial by jury conducted in August of 2011, the petitioner was found guilty of

second-degree murder, and on October 31, 2011 the petitioner was sentenced to life

imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.  The

petitioner thereafter appealed his conviction, asserting as error that the trial court denied his

motion for a mistrial, the state made a substantive amendment to the indictment after the trial

began, "other crimes" evidence was improperly admitted at trial, and the evidence was

insufficient to support his conviction.  On January 23, 2013, the petitioner's conviction and

sentence were affirmed by the Louisiana Court of Appeal for the First Circuit (R. Doc. 1-3).

The petitioner's application for supervisory review in the Louisiana Supreme Court was denied

on September 20, 2013.  *State v. Arnaud*, 2013-0447 (La. 9/20/2013), 123 So.3d 163.

On or about July 15, 2014, the petitioner filed an application for post-conviction relief in

the Eighteenth Judicial District Court, asserting several claims of ineffective assistance of

---

[1] The petitioner refers to §2241, but his petition is subject to the requirements of §2254, as he is "in custody pursuant to the judgment of a State court" and is attacking the validity of his conviction and sentence. *See Hartfield v. Osborne*, 808 F.3d 1066 (5th Cir. 2015).

counsel and a due process violation.  Pursuant to an Order dated May 20, 2015, the petitioner's

application was denied in the trial court.  The petitioner's requests for review of the denial of his

application for post-conviction relief, were denied on August 21, 2015 and October 17, 2016,[2]

respectively (R. Doc. 1-2).

On or about February 14, 2017, the petitioner filed the instant application for habeas

corpus relief in this Court.

## II.    Timeliness

This Court concludes that the petitioner's February 14, 2017 application is, in fact,

timely.  Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to

federal habeas corpus claims brought by prisoners in state custody.  This limitations period

begins to run on the date that the judgment becomes final through the conclusion of direct review

or through the expiration of time for seeking such review.  As a result, after a ruling by the

state's highest court on direct appeal, a petitioner's judgment becomes final when the United

States Supreme Court issues a decision denying discretionary review or, if no application for

review is made, upon the conclusion of the 90-day time period for seeking such review.  *Roberts

v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

As provided by the referenced statute, the time during which a properly filed application

for state post-conviction or other collateral review is thereafter pending before the state courts

with respect to the pertinent judgment or claim shall not be counted toward any part of the one-

year limitations period.  28 U.S.C. § 2244(d)(2).  However, the time during which there are no

properly filed post-conviction or other collateral review proceedings pending does count toward

---

[2] *State ex rel. Arnaud v. State*, 2015-1727 (La. 10/17/16), 202 So.3d 494.

calculation of the one-year period. To be considered "properly filed" for purposes of §

2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable

laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v.

Bennett*, 531 U.S. 4, 8 (2000). Further, a properly-filed state application is considered to be

"pending" both while it is before a state court for review and also during the interval after a state

court's disposition while the petitioner is procedurally authorized under state law to proceed to

the next level of state court consideration. *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir.

2001).

   In the instant case, the petitioner was sentenced on October 31, 2011. The Louisiana

Supreme Court denied the petitioner's writ application on direct review on September 20, 2013.

The judgment became final on December 19, 2013, upon the passage of the time allowed for him

to pursue discretionary review with the United States Supreme Court (90 days). Thereafter,

approximately 207 days elapsed before the petitioner filed his PCR application on July 15, 2014.

The Louisiana First Circuit Court of Appeal denied his writ application on August 21, 2015. The

petitioner filed an application for supervisory writs with the Louisiana Supreme Court, which

was denied on October 17, 2016.

   Approximately 120 days passed between the denial of petitioner's writ application by the

Louisiana Supreme Court and the filing of the instant petition on February 14, 2017. This results

in a total of 327 days of untolled time during which the petitioner did not have any properly filed

application for post-conviction or other collateral relief pending before the state courts.

Accordingly, less than a year elapsed during which the petitioner did not have any properly filed

applications for post-conviction or other collateral review pending before the state courts, and the petitioner's February 14, 2017 application is timely.

### III.    Total Exhaustion

Under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined.  The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.  *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir.1980).  As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the petition have been exhausted through the state courts.  *Rose v. Lundy,* 455 U.S. 509, 510 (1982). A district court may notice on its own motion a petitioner's failure to exhaust state court remedies.  *McGee v. Estelle,* 722 F.2d 1206, 1214 (5th Cir.1984).

The petitioner fully exhausted Claims 1-5 of his February 14, 2017 habeas petition by seeking review of his post-conviction application on these claims with the First Circuit and Louisiana Supreme Court.  However, the petitioner failed to fully exhaust Claim 6, which involves the alleged systemic exclusion of minorities from the jury pool in the Eighteenth Judicial District Court and his trial counsel's failure to object to same.  The petitioner filed a motion to supplement his post-conviction application to assert this claim on February 20, 2015, but the motion was denied by the Eighteenth Judicial District Court on May 20, 2015, when it ruled on the substance of the petitioner's post-conviction application.  When the petitioner filed his writ application with the First Circuit on June 29, 2015, he failed to assert the denial of his

motion to supplement as an assignment of error.  As such, Claim 6 was never presented to the

state's highest court and is not exhausted.

A habeas petitioner who has failed to properly present a federal constitutional claim to

the state courts may nonetheless be considered to have "technically exhausted" his state remedies

if the state courts are no longer available for a review of the claim because of a procedural bar.

*See Busby v. Dretke,* 359 F.3d 708, 724 (5th Cir.2004).  A claim is considered to be "technically

exhausted" when state relief is no longer procedurally available in connection with the claim,

without regard to whether the claim was actually exhausted by presentation before the state

courts.  *See Coleman v. Thompson,* 501 U.S. 722, 732 (1991).  In such instance, where a

petitioner fails to exhaust available state remedies and the court to which the petitioner would be

required to present his claim in order to meet the exhaustion requirement would now find the

claim procedurally barred, then the claim is technically exhausted and procedurally defaulted in

the state court.  *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir.1997), *See also Magouirk v.

Phillips,* 144 F.3d 348 (5th Cir.1998).  Federal review of the claim is then precluded unless the

petitioner can show that the applicable procedural rule is not regularly followed and "can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice."  *Jones v. Jones,* 163 F.3d 285, 296 (5th Cir.1998); *Nobles v. Johnson,

supra,* 127 F.3d at 423 n. 33; *Williams v. Cain,* 125 F.3d 269, 276 (5th Cir.1997).

In the instant case, the petitioner has clearly failed to exhaust Claim 6 before the

Louisiana state courts.  Specifically, he has never presented this claim before the First Circuit or

Louisiana Supreme Court, either on direct review or through post-conviction review

7

proceedings. If the petitioner were to now assert this claim before the state appellate courts, the state courts would unquestionably reject consideration of same as untimely and procedurally barred.

If the petitioner were to assert this unexhausted claim before the state courts in a second application for post-conviction relief, the state courts would reject the application as procedurally barred in reliance on La. Code Crim. Proc. Ann. art. 930.4(E), which states that a "successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," or in reliance on Article 930.8(A), which states that "[n]o application for post-conviction relief ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final...." Nor could the petitioner now seek review of Claim 6 in either the First Circuit Court of Appeal or the Louisiana Supreme Court. *See* Uniform Rules, Courts of Appeal, Rule 4–3 ("An application not filed in the appellate court within the time so fixed or extended [by the District Court] shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault."); Supreme Court Rule X, § 5(a) ("An application seeking to review a judgment of the court of appeal ... after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal"). Thus, the petitioner's Claim 6 is procedurally defaulted and the Court, by extension, is barred from undertaking review. *See Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir.1999) ("Procedural default exists where ... the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."); *Sones v. Hargett,* 61 F.3d 410, 416.[3]

---

[3] The petitioner is hereby specifically instructed that this Report and Recommendation shall constitute notice to him that this Court is *sua sponte* raising the issue of procedural default and that the petitioner must submit any evidence

8

## IV.    Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal[4] are as follows:  Roderick Henderson, Morquincy Mosby, Jeremy Butler, and the petitioner rode together to Dedrick Edwards' home for the purpose of buying drugs.  The state's case against the petitioner hinged on the testimony of Jeremy Butler.  Butler testified that all 4 men planned to "jack" Edwards.  Butler and Henderson brought revolvers and the petitioner brought a SKS rifle.  Butler testified that he was the only one that got out of the car when they arrived at Edwards' home.  The victim, James Kelly, opened the door and let Butler in the home. When Butler entered the home, he knocked on Edwards' bedroom door and, when Edwards opened the door, he told Edwards that he wanted to buy an "8-ball."  Butler went into the bathroom with Edwards to retrieve the drugs, but instead of paying, Butler grabbed the drugs and he and Edwards starting fighting.  Butler claimed that as they were fighting, he heard a gunshot and pulled out his revolver.  At this point in time, Edwards let him go and Butler ran out of the bedroom.  Butler testified that he then saw the petitioner standing inside the home with the rifle in his hands and the victim, James Kelly, lying on the floor.

Edwards' girlfriend, Shaila Delaune, also testified at trial.  Delaune was in the bedroom when the shooting occurred.  Delaune did not see who shot the victim, but confirmed that it was not Butler, as he was engaged in a struggle with Edwards at the time she heard the gunshot. Edwards also testified at trial.  Edwards denied that the incident was about a drug purchase, speculating that Butler was upset because Edwards slept with Butler's girlfriend.

---

or argument concerning the default as part of any objections he may file to this Report.  *See Magouirk v. Phillips, supra,* 144 F.3d at 359.

[4] *State v. Arnaud*, 2012-KA-0758 (unpublished opinion), R. Doc. 1-3.

Iberville Parish Sheriff's Department investigated the crime scene and determined that only one shot had been fired. Charles Watson, an expert in the field of forensic science and firearms examination, testified that the bullet in the victim's body could not have been fired from a pistol, but was consistent with firing from a rifle.

## V.    Law and Analysis

### a.    Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the

'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").  State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### b.   Substantive Review

#### i.   Claim (1): State Court's Failure to Hold Evidentiary Hearing

The petitioner argues that he is entitled to habeas relief because the Eighteenth Judicial District Court failed to hold an evidentiary hearing during his post-conviction proceeding.[5]  The record reflects that the 18th Judicial District Court granted the petitioner's request for an evidentiary hearing.  However, the petitioner was never transported to the court for a hearing.  The 18th Judicial District Court ruled on the petitioner's post-conviction application without a hearing, acknowledging in its opinion that a hearing was never held due to transportation issues.

The federal habeas court does not sit to correct procedural errors alleged to have happened in the postconviction process.  *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001) ("[I]nfirmities in State habeas proceedings do not constitute grounds for relief in federal court.");  *Vizcarra v. Reagans*, 600 Fed. Appx. 942, 943 (5th Cir. 2015) (same).  *See also Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Furthermore, the courts have rejected habeas claims that the state court should have held an evidentiary hearing on a

---

[5] The Court notes that the state argues that claim 1 is not exhausted because the appeal was untimely.  A review of the record and the attachments to the petitioner's application shows that the district court set the return date on the appeal for July 3, 2015 and the petitioner's First Circuit writ application is dated June 29, 2015.  The First Circuit opinion is not in the record.  Although the state argues that the Louisiana Supreme Court denied the petitioner's subsequent writ as untimely, the opinion from the Louisiana Supreme Court did not state that his writ application was untimely. Accordingly, the court rejects the state's argument that Claim 1 is unexhausted and proceeds on substantive grounds.

11

postconviction application.  *Mathis v. Dretke*, 124 Fed. Appx. 865, 871-72 (5th Cir. 2005).

There is no requirement that the state court hold a full and fair hearing before it denies a

postconviction application, and the federal court applies a presumption of correctness to state

court findings even absent such a hearing.  *Id., citing Valdez v. Cockrell*, 274 F.3d 941, 949 (5th

Cir. 2001).  Petitioner is not entitled to habeas relief from his conviction based on this claim.

### ii.    Claims (2), (3), & (5): Ineffective Assistance of Counsel

A habeas petitioner who asserts that he was provided with ineffective assistance of

counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*,

that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed

the petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his

defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial

in which the result is reliable.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The

petitioner must make both showings in order to obtain habeas relief based upon the alleged

ineffective assistance of counsel.  *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must

demonstrate that his counsel's representation fell below an objective standard of reasonableness

as measured by prevailing professional standards.  *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813,

816 (5th Cir. 1986).  The reviewing court must indulge a strong presumption that counsel's

conduct fell within the wide range of reasonable professional competence and that, under the

circumstances, the challenged action might be considered sound trial strategy.  *See,* e.g., *Bridge

v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to

eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's

perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

      **iii.**        **Claim (2): Trial Counsel Failed to Object to the State's Expert Testimony on the Ultimate Issue**

The petitioner claims that he was denied effective assistance of counsel because his trial counsel did not object to testimony given by the state's forensic pathologist, Dr. Alfredo Suarez. Specifically, the petitioner contends that his trial counsel should have objected when Dr. Suarez testified that "the bullet fragments found in the victim were in the manner of homicide." (R. Doc.

1-1).  The petitioner argues that expert witnesses are prohibited from testifying to manners that embrace ultimate issues.  In its opposition, the state argues that Dr. Suarez did not testify on the ultimate issue of the petitioner's guilt, but instead offered testimony on the manner of death.  In ruling on the petitioner's post-conviction application, the Eighteenth Judicial District determined that this argument lacked merit, as the term "homicide" simply means that the victim died at the hands of another.[6]

The petitioner has not shown that the admission of Dr. Suarez's testimony that the manner of death was homicide was improper.  It is true that, under Louisiana law, expert witnesses in a criminal case are not allowed to express an opinion as to the guilt or innocence of the accused.  "Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused."  La. Code Evid. art. 704.  Review of the trial court record indicates that Dr. Suarez expressed no opinion as to whether the petitioner was guilty as charged. Rather, as noted by the trial court, Dr. Suarez testified about the manner of death.[7]  The issue of guilt or innocence was properly reserved for the jury.

"Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins,* 19 F.3d 959, 966 (5th Cir.1994).  Even if the petitioner's trial counsel had objected to Dr. Suarez's testimony, the objection would have lacked merit.  The performance of the petitioner's trial counsel cannot be considered constitutionally deficient for failing to raise a meritless objection.  This claim provides no basis for federal habeas relief.

---

[6] Trial Court Record, Vol 10, p. 219.
[7] Trial Court Record, Vol. 8, p. 1758-1778.

iv.    **Claim (3): Appellate Counsel Failed to Assign Witness Sequester Violation as Error on Appeal**

In Claim 3, the petitioner asserts that he was denied effective assistance of counsel from his appellate counsel because appellate counsel did not assign a witness sequester violation as an error in his direct appeal.  During petitioner's trial, counsel for one of the petitioner's co-defendants brought to the trial court's attention that prosecution witness, Shaila Delaune, violated the trial court's sequester order.[8]  Delaune was questioned by the trial court and admitted that she was in the courtroom for approximately 5 minutes of testimony from Dedrick Edwards.[9]  The trial court declined to disqualify Delaune as a witness, ruling that it would allow the defense to cross-examine Delaune about violating the sequester order.[10]  The petitioner's trial counsel objected to the ruling and requested that the trial judge make a statement to the jury that the witness violated the sequester rule.[11]  The trial court declined to make a statement to the jury, limiting the remedy to allowing the defense to cross-examine the witness about the sequester violation.[12]  Delaune testified on direct examination that she heard about 5 minutes of Dedrick Edwards' testimony, but what she heard did not change her testimony in any way.[13]

Under Louisiana Code of Evidence article 615(C), "a trial court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness."  The resolution of sequester problems is within the sound discretion of the trial court.  *State v. Ondek,* 584 So.2d

---

[8] Trial Court Record, Vol. 7, p. 1684-1685.
[9] Trial Court Record, Vol. 7, p. 1685-1686.
[10] Trial Court Record, Vol. 7, p. 1689-1690.
[11] Trial Court Record, Vol. 7, p. 1690.
[12] Trial Court Record, Vol. 7, p. 1690-1691.
[13] Trial Court Record, Vol. 7, p. 1711-1713.

15

282, 298 (La. App. 1st Cir.). The standard of review on appeal of a trial court's sanction for violation of a sequester order is abuse of discretion. *State v. Stewart*, 387 So.2d 1103 (La. 1980). On appeal, the reviewing court will look at the facts of each case to determine whether or not a sequestration violation resulted in prejudice to the accused. *State v. Lopez,* 562 So.2d 1064, 1066 (La. App. 1st Cir.1990).

If the petitioner's appellate counsel had assigned the sequester violation as an error on appeal, to have prevailed, the petitioner would have been required to show that the trial court abused its discretion in its choice of remedy and that the petitioner was prejudiced by the trial court's remedy of allowing the defense the cross-examine Shaila Delaune about her sequester violation. The petitioner cannot demonstrate that he was prejudiced by the trial court's choice of remedy on the sequester violation and, thus, cannot demonstrate that he received ineffective assistance from appellate counsel, who failed to assign this as an error on appeal. Delaune testified that she only heard about 5 minutes of Dedrick Edwards' testimony. There is nothing in the trial court record to indicate that Delaune's testimony was influenced by the 5-minute sequester violation or that the jury relied solely upon her testimony in reaching a guilty verdict. To the contrary, there was sufficient evidence to support a guilty verdict notwithstanding Delaune's testimony. The First Circuit engaged in a lengthy review on direct appeal of the sufficiency of the evidence introduced to support the guilty verdict, which included the testimony of witnesses other than Delaune (Butler and Edwards). Claim 3 does not warrant federal habeas corpus relief as the petitioner has failed to demonstrate he was prejudiced by his appellate counsel's failure to raise the sequester violation as an error on direct appeal.

v.      Claim (5):  Trial Counsel Improperly Stipulated that Dr. Suarez was an Expert

In Claim 5, the petitioner asserts that he received ineffective assistance of counsel when his trial counsel stipulated that the state's forensic pathologist, Dr. Alfredo Suarez, was an expert.  The petitioner argues that his trial counsel should never have stipulated to Dr. Suarez's expertise, as he is not a board-certified forensic pathologist.  The petitioner contends that trial counsel's stipulation allowed Dr. Suarez to give testimony outside of his expertise, including his opinion on the cause and manner of death.

Generally, the test of competency of an expert is the expert's knowledge of the subject about which he is called upon to express an opinion.  *State v. Ferguson*, 2009–1422 (La. App. 4th Cir. 12/15/10), 54 So.3d 152, 166.  Courts can also consider whether a witness has previously been qualified as an expert.  *State v. Craig*, 95-2499 (La. 5/20/97), 699 So.2d 865.

The petitioner does not present any evidence to support Claim 5.  He makes the bald assertion that Dr. Suarez is not a board-certified forensic pathologist.  Even if Dr. Suarez is not board-certified, he could still qualify as an expert under Louisiana law by virtue of his experience.  See *Sandbom v. BASF Wyandotte, Corp.*, 95-0335 (La. App. 1 Cir. 04/30/96), 674 So.2d 349.  Furthermore, the petitioner does not present any evidence to show error in Dr. Suarez's testimony.  The petitioner does not present any evidence that had the prosecution been required to elicit testimony from Dr. Suarez regarding his qualifications the trial court would not have qualified him as an expert.  The stipulation was a concession of facts which the state could have easily established.  There was no apparent advantage to the petitioner for counsel to not enter the stipulation.  The petitioner has not shown the necessary prejudice to support an ineffective assistance of counsel claim regarding the stipulation.

### vi.       Claim (4): Denial of Due Process

In Claim 4, the petitioner asserts that he was denied due process of law when "the state

knowingly solicited perjured testimony from [Dr. Suarez] regarding his credentials as a forensic

pathologist." Specifically, the petitioner contends that Dr. Suarez falsely testified that he is a

board-certified forensic pathologist and that the state knew he was not board certified. The

petitioner claims that this "false" testimony was prejudicial to his defense because Dr. Suarez

testified about the cause and manner of the victim's death.

It is a violation of the Fifth and Fourteenth Amendments to the United States Constitution

for the prosecution to knowingly use perjured testimony. *Napue v. Illinois,* 360 U.S. 264 (1959).

In order to establish a *Napue* violation, the petitioner must show: (1) the statements in question

are actually false, (2) the prosecution knew that the statements were false, and (3) the statements

were material. *United States v. Haese,* 162 F.3d 359, 365 (5th Cir. 1998). The trial court record

demonstrates that Dr. Suarez never testified that he was a board-certified forensic pathologist.[14]

Dr. Suarez testified that he was a pathologist and that his job involves forensic review of

evidence, but he never stated that he was board-certified in forensic pathology. Accordingly, the

petitioner cannot demonstrate that the testimony was actually false and his *Napue* claim is

without merit.[15]

### c.       Request to Amend Habeas Petition (R. Doc. 15)

On March 7, 2019, the petitioner filed a document he styled as "Memorandum of Law in

Support of Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to Title 28

---

[14] Trial Court Record, Vol. 8, p. 1758-1778.
[15] To the extent that petitioner's claims could be construed to assert that his counsel was ineffective for failing to object to this testimony, the reasoning above likewise applies to show that such an objection would have been meritless and therefore failing to do so was not prejudicial.

18

U.S.C. § 2241" (R. Doc. 15).  In this document, the petitioner seeks to amend his initial habeas petition, asserting: (1) the court should consider his additional claims, (2) the trial court erred in denying his motion for a mistrial and erred in allowing the state to amend the indictment after jury selection was completed, (2B) the jury verdict was an unreasonable determination in light of the facts and evidence, (3) the First Circuit failed to conduct a sufficient scope of appellate review, and (4) the trial court denied petitioner's right to full voir dire examination of prospective jurors.

The petitioner's "Claim 1" is a request to add additional claims that were not asserted in his initial habeas petition filed on February 14, 2017.  Federal law only allows parties to interject claims in an amended habeas petition when they "relate back to the date of the original pleading" as understood by Federal Rules of Civil Procedure Rule 15(c)(2).  *See Mayle v. Felix,* 545 U.S. 644, 650 (2005).  "[C]laims raised in an amendment to a habeas petition [do] not automatically relate back merely because they arose out of the same trial and conviction."  *United States v. Gonzalez,* 592 F.3d 675, 679 (5th Cir. 2009) (*citing Felix,* 545 U.S. at 650).  Instead, when "the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Felix,* 545 U.S. at 664.

Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Therefore, only those claims in the amended petition that are tied to a common core of operative facts as the claims in the original petition will relate back to the original petition and be considered timely filed. *See Felix,* 545 U.S. at 664.  In order for

19

the petitioner's newly proposed claims to relate back to the date he originally filed his habeas petition, there must be some commonality between it and the claims he initially raised.

All of the petitioner's new claims raised in R. Doc. 15 are separate and distinct from the ones asserted in his original habeas petition [Compare to R. Doc. 1]. The new claims do not supplement or amplify the facts already alleged, but attempt to introduce new legal theories on facts different from those underlying the original claims. *See, e.g., United States v. Hicks,* 283 F.3d 380, 388 (D.C. Cir. 2002) (although "an amendment offered for the purpose of adding to or amplifying the facts already alleged in support of a particular claim may relate back ... one that attempts to introduce a new legal theory based on facts different from those underlying the timely claims may not") (citations omitted).

Because the petitioner's new claims in R. Doc. 15 do not relate back to the original petition for habeas corpus, they are time-barred.[16] "A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period." *United States v. Duffus,* 174 F.3d 333, 338 (3d Cir. 1999). On direct review, the petitioner's new "Claim 2" and "Claim 2B" were presented to the First Circuit and the Louisiana Supreme Court. As discussed above, the petitioner was sentenced on October 31, 2011. The Louisiana Supreme Court denied the petitioner's writ application on direct review on September 20, 2013. The judgment became final on December 19, 2013, upon the passage of the time allowed for him to pursue discretionary review with the United States Supreme Court (90 days). Because the petitioner did not assert the new "Claim 2" or "Claim 2A" in his post-

---

[16] The court may raise the affirmative defense of the statute of limitations *sua sponte. See Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999); *see also Day v. McDonough,* 547 U.S. 198, 210 (2006) (district courts are permitted, but not obliged, to consider, *sua sponte,* the timeliness of a prisoner's habeas petition in process issued cases).

conviction application, the time clock ran between the day his conviction became final on

December 19, 2013, and the day he filed the proposed amendment to his habeas petition on

March 7, 2019.  Thus, 1,904 days of untolled time elapsed, making "Claim 2" and "Claim 2A"

untimely.[17]  "Claim 3" and "Claim 4" were never presented to the state courts, either on direct

appeal or in a post-conviction application.  As such, "Claim 3" and "Claim 4" are both untimely

and unexhausted.[18]

  The record lacks any basis for equitable tolling in this case.  The one-year federal

limitations period is subject to equitable tolling only "in rare and exceptional circumstances."

*See United States v. Patterson,* 211 F.3d 927, 928 (5th Cir. 2000).  The doctrine of equitable

tolling "applies principally where the plaintiff is actively misled by the defendant about the cause

of action or is prevented in some extraordinary way from asserting his rights."  *Coleman v.

Johnson,* 184 F.3d 398, 402 (5th Cir. 1999).  "A petitioner's failure to satisfy the statute of

limitations must result from external factors beyond his control; delays of the petitioner's own

making do not qualify."  *In re Wilson,* 442 F.3d 872, 875 (5th Cir. 2006).

  Generally, a litigant seeking equitable tolling bears the burden of establishing two

elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way.  *Pace v. DiGuglielmo, supra,* 544 U.S. at 418.  Ignorance of the

law, lack of knowledge of filing deadlines, a temporary denial of access to research materials or

the law library, and inadequacies in the prison law library, are not generally sufficient to warrant

---

[17] The petitioner's proposed amendment is untimely even if the court were to find the claims related back to the original habeas petition, with 1,153 days of untolled time passing between the date the conviction was final on December 19, 2013 and the date the original habeas petition was filed on February 14, 2017.

[18] The Court does not address the timeliness of "Claim 1," as this "claim" is merely a request to add the new claims in R. Doc. 15.

equitable tolling. *Tate v. Parker,* 439 F. App'x. 375, 376 (5th Cir. 2011); *Felder v. Johnson,* 204 F.3d 168, 171–2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir. 2012). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and after the denial thereof by the state appellate courts. *See Ramos v. Director,* 2010 WL 774986, *4 (E.D. Tex. 2010). "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence," *Holland v. Florida,* 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id.* at 649–50.

The circumstances of this case are not "extraordinary" such that equitably tolling can be applied. The petitioner in the instant matter has demonstrated no such diligence and alacrity. All of the petitioner's exhausted new claims could have been brought in his initial habeas petition (Claim 2 and 2B). The petitioner was able to bring direct review and post-conviction review proceedings on the exhausted claims and there is nothing to suggest that extraordinary circumstances prevented him from asserting the unexhausted claims in those proceedings (Claim 3 and 4). As such, the petitioner did not diligently pursue his rights, nor was he prevented from doing so in some extraordinary manner. The petitioner's request to amend his initial habeas petition should be denied, as all of the new claims asserted in R. Doc. 15 are untimely.

## VI.     Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. §

2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court

may address whether she would be entitled to a certificate of appealability. *See Alexander v.*

*Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a

habeas petitioner has made a substantial showing of the denial of a constitutional right. 28

U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive

grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues presented

are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787

(5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the

Court finds that reasonable jurists would not debate the denial of petitioner's application or the

correctness of the substantive or procedural rulings. Accordingly, it is appropriate that, in the

event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability

should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's motion to amend be denied. It is further

recommended that the petitioner's application for habeas corpus relief be denied, and that this

proceeding be dismissed. It is further recommended that in the event the petitioner pursues an

appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on October 1, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

23